IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Lawon Lalita Jones, | ) | Civil Action No. 8:11-cv-00796-JFA -JDA |
| Plaintiff, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Michael J. Astrue, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local Civil Rule 73.02(B)(2)(a), D.S.C., and Title 28, United States Code, Section 636(b)(1)(B).[1] Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for disability insurance benefits ("DIB"). For the reasons set forth below, it is recommended that the decision of the Commissioner be affirmed.

---

[1] A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

<u>**PROCEDURAL HISTORY**</u>

In October 2006, Plaintiff protectively filed an application for DIB,[2] alleging an onset of disability date of January 15, 2005.[3] [R. 98–102.] The claim was denied initially [R. 48, 57–62] and on reconsideration by the Social Security Administration ("the Administration") [R. 50, 64–66]. Plaintiff requested a hearing before an administrative law judge ("ALJ") [R. 67–68], and on July 8, 2009, ALJ William F. Pope conducted a de novo hearing on Plaintiff's claims [R. 23–42].

The ALJ issued a decision on August 25, 2009, finding Plaintiff not disabled. [R. 14–22.] The ALJ found Plaintiff last met the insured status requirements of the Social Security Act ("the Act") on March 31, 2009 [R.16, Finding 1], and she had not engaged in substantial gainful activity from her alleged onset date through her date last insured [*id.*, Finding 2]. Next, the ALJ found Plaintiff had a severe impairment, heart disease [*id.*, Finding 3], but Plaintiff had no functional limitations as a result of her headaches or anxiety/depression, and these impairments, considered singly or in combination, were not severe [R. 17]. The ALJ also determined Plaintiff's medical records consistently showed no evidence of ischemic heart disease, and Plaintiff's mental impairments, evaluated under Listings 12.04 and 12.06, revealed only mild restrictions in activities of daily living; mild difficulties in social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation of extended duration. [*Id.*] Accordingly, the

---

[2] Plaintiff had previously applied for DIB and supplemental security income ("SSI"). [*See* R. 46–47, 51–56, 111, 157.] It also appears Plaintiff filed an application for SSI in October 2006, but the application is not in the record, and it does not appear that Plaintiff appealed the initial denial of the October 2006 SSI claim. [*See* R. 49, 57–62 (initial denial of October 2006 SSI claim is all that is contained in the record).]

[3] At her hearing before the administrative law judge, Plaintiff amended her onset of disability date to September 29, 2006. [R. 25.]

ALJ concluded Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [*Id.*, Finding 4.]

The ALJ concluded Plaintiff retained the residual functional capacity ("RFC") to perform work with restrictions that require no lifting or carrying over twenty pounds occasionally and ten pounds frequently; no pushing or pulling over ten pounds; no more than occasional stooping, twisting, crouching, kneeling, and climbing of stairs or ramps; no balancing or climbing of ladders or scaffolds; and an environment reasonably free from extremes of temperature and humidity. [*Id.*, Finding 5.] Based on this RFC, the ALJ found Plaintiff was unable to perform her past relevant work as a certified nursing assistant [R. 20, Finding 6], but jobs existed in significant numbers in the national economy Plaintiff could perform [*id.*, Finding 10]. As a result, the ALJ determined Plaintiff was not disabled as defined by the Act from September 29, 2006 through March 31, 2009. [R. 21, Finding 11.]

Plaintiff requested Appeals Council review of the ALJ's decision [R. 9], but the Council declined to review the ALJ's decision [R. 1–3]. Plaintiff filed this action for judicial review on April 4, 2011. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ improperly evaluated and weighed the opinion of Plaintiff's treating cardiologist, who provided a statement concluding Plaintiff's physical problems and functional limitations would severely inhibit her from engaging in even less than ordinary physical activity. [Doc. 13 at 4–7.] Specifically, Plaintiff states that "the

Administrative Law Judge's decision to totally disregard the clinically based opinions of Plaintiff's treating cardiologist are not supported by any significant contradictory evidence and his reasons for disregarding the doctor's opinions as delineated in his decision are grossly inadequate." [*Id.* at 6; *see also* Doc. 15 at 2 (explaining how the "the Administrative Law Judge's hypothesis is a total distortion of the clinically based opinions of the long term treating specialist").] Further, Plaintiff contends the ALJ's decision inadequately addressed the factors listed in 20 C.F.R. § 404.1527(d), which guide the weighing of a treating physician's opinion that is not entitled to controlling weight. [Doc. 13 at 6–7; Doc. 15 at 2–3.]

The Commissioner contends the ALJ applied the correct legal standard in evaluating the treating physician's opinion and substantial evidence supports the ALJ's decision to assign very little weight to the treating physician's opinion. [Doc. 14 at 12–16.] Specifically, the Commissioner argues the ALJ's finding that the treating physician's opinion was inconsistent with his own treatment records, where the ALJ also noted examples of inconsistencies, was a valid reason for finding Plaintiff was capable of a limited range of light work, as opposed to sedentary work. [*Id.* at 14.] Further, the Commissioner contends substantial evidence supports the ALJ's conclusion that the treating physician's opinion was inconsistent with the medical evidence. [*Id.* at 14–16.]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must

4

include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963))("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient

reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the Commissioner to explain the basis for the decision. *See Smith v. Heckler*, 782 F.2d 1176,

1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d

26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[4] With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

---

[4]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence. *See, e.g.*, *Ashton v. Astrue*, No. 6:10-cv-152, 2010 WL 5478646, at *8 (D.S.C. Nov. 23, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992). Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

8

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims).   The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.  20 C.F.R. § 404.1520.  Through the fourth step, the burden of production and proof is on the claimant.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).  The claimant must prove disability on or before the last day of her insured status to receive disability benefits.  *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).  If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience.  *Grant*, 699 F.2d at 191.  If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary.  20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

## A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 404.1572(b).  If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity.  *Id.* §§ 404.1574–.1575.

## B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.  *See id.* § 404.1521.  When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.  42 U.S.C. § 423(d)(2)(B).  The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses.  *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them").  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments.").  If the ALJ finds a

combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B).

**C.    *Meets or Equals an Impairment Listed in the Listings of Impairments***

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d).

**D.    *Past Relevant Work***

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[5] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work. 20 C.F.R. § 404.1560(b).

**E.    *Other Work***

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); 20 C.F.R. § 404.1520(f)–(g). To meet this burden, the

---

[5]Residual functional capacity is "the most [a claimant] can do despite [his] limitations." 20 C.F.R. § 404.1545(e)

Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids"). Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[6] 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *see also Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations). When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines. *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work. 20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy."). The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker*, 889 F.2d at 50. For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all

---

[6]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. § 404.1569a. A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands. *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. *Id.*

other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II.     Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

The opinion of a claimant's treating physician must "be given great weight and may be disregarded only if there is persuasive contradictory evidence" in the record. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citing *Foster v. Heckler*, 780 F.2d 1125, 1130 (4th Cir. 1986) (holding that a treating physician's testimony is entitled to great weight because it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time); *Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983)). If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the

ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence.  *Craig*, 76 F.3d at 590.  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See id.* (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion.  20 C.F.R. § 404.1527(d).  In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See  Mitchell*, 699 F.2d at 187 (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(d)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways.  *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. § 404.1527(e). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV.  Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 404.1517; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. § 404.1517. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

## V.  Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion). First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which

could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594). Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the Fourth Circuit's "pain rule," it is well established that "subjective complaints of pain and physical discomfort can give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman*, 829 F.2d at 518. The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable

> objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.  Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*,

493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor. But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## RELEVANT MEDICAL EVIDENCE

**Treatment Notes and Physician Opinions**

Plaintiff's medical records reflect treatment for depression, hypertension, headaches, and other conditions at Family and Preventive Medicine during the period from February 2002 through July 2005. [R. 216–55.] Plaintiff expressed her headaches were relieved by over-the-counter medications, and in December 2004 her prescription for Imitrex, a medication for migraine headaches, was discontinued. [R. 216, 247.] Plaintiff also reported the medication Zoloft helped her depression a "great deal." [R. 216.] During this period, Plaintiff also complained of increased stress related to her ten-year-old son's problems with attention deficit hyperactivity disorder. [R. 216–18, 245, 251.]

On November 17, 2005, Willie C. Floyd, M.D., examined Plaintiff upon a referral in connection with her disability claim. [R. 256–59.] Examination revealed blood pressure of 140/90; regular heart rate and rhythm, with no evidence of cardiac failure; normal range of motion in all joints; muscle strength within normal limits; no obvious motor or sensory deficits; thought processes and intelligence within normal limits; grossly intact memory; and a mildly flat affect. [R. 257–58.] Dr. Floyd concluded Plaintiff's headaches were most likely related to stress and recommended treatment and evaluation for "stress issues." [R. 259.]

On September 29, 2006, Plaintiff was admitted to Palmetto Health with tachycardia and complaints of chest pain. [R. 283, 286; *see* R. 277–93.] Robert A. Schulze, Jr., M.D., noted Plaintiff was taking medications for hypertension and insomnia and had recently stopped taking medication for depression. [R. 283.] Dr. Schulze diagnosed paroxysmal supra-ventricular tachycardia, persistent sinus tachycardia, controlled hypertension, and chest pain and recommended diagnostic studies. [R. 284.] Dr. Schulze noted his impression was "at least marginally suspect" because Plaintiff's chart did not contain a rhythm strip or electrocardiogram documenting supraventricular tachycardia. [*Id.*]

On October 16, 2006, Tad Venn, M.D., examined Plaintiff at Family and Preventative Medicine in follow up from her hospital visit. [R. 320–24.] Dr. Venn noted he believed Plaintiff's tachycardia to be related to the use of anti-hypertensive medication and that her ejection fraction[7] had increased from 25% while hospitalized to 35% after discharge. [R. 321.] He assessed paroxysmal supraventricular tachycardia, hypertension, migraine headaches, and mild insomnia. [R. 323.] On October 18, 2006, Plaintiff was admitted to Palmetto Health after determination of her tachy arrhythmia. [R. 332; see R. 330–46.] On discharge, Leverne Prosser, M.D., noted Plaintiff's tachycardia resolved with medication and that cardiac catheterization showed normal coronary anatomy with depressed ejection fraction. [R. 330.] Plaintiff's discharge diagnoses included (1) systolic congestive heart failure secondary to (2) atrioventricular nodal reentrant tachycardia with heart rates in the 240 range and (3) normal coronary anatomy without atherosclerosis. [*Id.*]

---

[7] Ejection fraction is a test that determines how well your heart pumps with each beat; ejection fraction measurement of 55–70% is normal; 40–55% is below normal; less than 40% may confirm diagnosis of heart failure; and less than 35% may evidence life-threatening irregular heartbeats. Understanding Your Ejection Fraction, Cleveland Clinic, http://my.clevelandclinic.org/heart/disorders/heartfailure/ejectionfraction.aspx (last visited March 27, 2012).

On November 1, 2006, following her discharge, Dr. Prosser noted Plaintiff had done well but had exertional shortness of breath and New York Heart Association Class III heart disease.[8] Dr. Prosser diagnosed AV nodal reentrant tachycardia, systolic congestive heart failure, left ventricular enlargement, and left ventricular hypertrophy. [R. 353.] On December 13, 2006, Dr. Prosser noted Plaintiff (1) was doing "much better" with improving shortness of breath and only "occasionally fleeting chest pain," (2) had an improved ejection fraction, and (3) now had a normal size left ventricle. [R. 352.] On January 5, 2007, Dr. Prosser noted Plaintiff had been seen in the emergency room for a spell of chest pain that was found to be musculoskeletal in origin. [R. 351.] He noted Plaintiff had not had any more supraventricular tachycardia, her ejection fraction remained the same as at her last visit, and she was tolerating all of her medications. [*Id.*]

On February 9, 2007, Plaintiff presented to the hospital emergency room for chest pain. [R. 435–38.] Examination revealed regular heart rate and rhythm and no lower extremity edema. [R. 436.] She was discharged with a clinical impression of atypical chest pain, congestive heart failure, and hypertension. [R. 437.] On March 15, 2007, Plaintiff

---

[8] The New York Heart Association Functional Classification System places patients in one of the following four categories:

- Class I – Patients with cardiac disease but without resulting limitation of physical activity.
- Class II – Patients with cardiac disease resulting in slight limitation of physical activity. They are comfortable at rest. Ordinary physical activity results in fatigue, palpitation, dyspnea, or anginal pain.
- Class III – Patients with cardiac disease resulting in marked limitation of physical activity. They are comfortable at rest. Less than ordinary activity causes fatigue, palpitation, dyspnea, or anginal pain.
- Class IV – Patients with cardiac disease resulting in inability to carry on any physical activity without discomfort. Symptoms of heart failure or the anginal syndrome may be present even at rest. If any physical activity is undertaken, discomfort is increased.

*See* American Heart Association, "Classification of Functional Capacity and Objective Assessment," available at www.americanheart.org.

again presented to the emergency room for chest pain [R. 439–41] and complained of being "very anxious and stressed regarding the situation with her son" [R. 439]. A physician determined that her chest pain was "noncardiac" and "clearly related to her anxiety." [R. 440–41.]

On April 12, 2007, Dr. Prosser noted Plaintiff was tolerating her medications well and had an ejection fraction of 35%, which was much improved from when Dr. Prosser first saw Plaintiff. [R. 418.] Later that day, Plaintiff presented to the emergency room, complaining of a headache she had since taking medication Dr. Prosser gave Plaintiff at her appointment that day. [R. 442; *see* R. 442–44.] The emergency room doctor opined Plaintiff's symptoms were related to either the medication or a lack of sleep and stress. [R. 443.] The following week, Dr. Prosser noted Plaintiff had "an awful reaction" to the new medication and adjusted her medication regimen. [R. 417.] He also noted her ejection fraction as 40% and stated she had "exertional dyspnea and New York Heart Association Class II." [*Id.*]

On April 19, 2007, William E. Gore, Ph.D., performed a mental status examination upon a referral in connection with Plaintiff's disability claim. [R. 378–80.] Dr. Gore noted Plaintiff made no complaints related to mental impairments but complained only of physical impairments. [R. 378.] Dr. Gore found Plaintiff had a full range and appropriate affect, logical thoughts, adequate memory, good concentration and attention, and good judgment and insight and noted "some mild indications of depression and associated anxiety." [R. 379–80.] Dr. Gore diagnosed depressive disorder with "no more than mild functional limitations in any domain." [R. 380.]

On May 25, 2007, Plaintiff again sought treatment in the emergency room for chest pain. [R. 401; *see* R. 397–405.] Diagnostic studies were negative for ischemia, and she was discharged with diagnoses of atypical chest pain, hypokalemia, and supraventricular tachycardia with ablation. [R. 397.] About one month later, she returned to the emergency room with complaints of chest pain. [R. 408; *see* 406–14.] Her cardiac enzymes and EKG results were reported as negative, and she was discharged with diagnoses of chest pain and hypomagnesemia. [R. 406.] On follow up with Dr. Prosser, Plaintiff complained of increased chest pain and shortness of breath. [R. 416.] Dr. Prosser ordered an echocardiogram due to her increased symptoms. [*Id.*] The next day, Dr. Prosser noted Plaintiff's echocardiogram showed an ejection fraction of 40%, and he adjusted her medications. [R. 415.]

On July 19, 2007, Plaintiff sought emergency treatment for chest pain. [R. 450; *see* R. 450–54.] Tests revealed nothing abnormal, and Plaintiff was discharged with diagnoses of chest pain and hypertension. [R. 451.] A few days later, Plaintiff returned to the emergency room, complaining of chest pain. [R. 455; *see* R. 455–59.] No signs of a cardiac cause of her pain was identified. [R. 456.] Plaintiff was discharged with diagnoses of chest pain, congestive heart failure, and hypertension. [R. 456–57.]

On October 11, 2007, Dr. Prosser examined Plaintiff, who complained of chest pain and "flutters." [R. 539.] Dr. Prosser found Plaintiff had regular heart rate, controlled hypertension, and an ejection fraction of 40%. [*Id.*] Dr. Prosser ordered an event monitor and discussed medications and diet for congestive heart failure. [*Id.*] On October 18, 2007, Plaintiff complained to Dr. Venn of chest pain. [R. 518–21.] Dr. Venn found Plaintiff

had normal heart sounds and pulses; no cyanosis, clubbing, or edema; and normal gait and station. [R. 520.] He found her blood pressure was well-controlled with medication and recommended an echocardiogram to assess her ejection fraction. [R. 520–21.]

On October 31, 2007, Dr. Prosser noted Plaintiff's event monitor had shown only regular heart rate, she had no chest pain or meaningful shortness of breath, and she was otherwise doing well except for some insomnia. [R. 540.] On March 6, 2008, Dr. Prosser noted Plaintiff was doing better and had no meaningful chest pain or shortness of breath, an ejection fraction of 40%, and no complaints other than mild osteoarthritic problems. [R. 541.]

On March 19, 2008, Plaintiff presented to Dr. Prosser complaining of a very fast heart rate, chest pain, and shortness of breath. [R. 542.] Dr. Prosser diagnosed "idiopathic tachycardia, etiology to be determined" and admitted her to the hospital to evaluate thyroid function and to rule out myocardial infarction. [*Id.*] On May 27, 2008, Dr. Prosser noted Plaintiff's echocardiogram showed improvement with an ejection fraction of 45%, although she still experienced palpitations and fast heart rate. [R. 543.] On July 9, 2008, Dr. Prosser noted Plaintiff still reported palpitations and chest pain but was generally doing better. [R. 544.] He again noted that her ejection fraction was 45% and adjusted her medications. [*Id.*]

On June 12, 2008, Jeffrey W. Hall, M.D., examined Plaintiff at Palmetto Health Richland Family Medicine Center in relation to complaints of chest pain. [R. 510–13.] Dr. Hall attributed Plaintiff's symptoms to gastroesophageal reflux disease and panic attacks. [R. 512.] On August 7, 2008, Plaintiff advised Dr. Prosser that she had been to the

23

emergency room twice for chest pain; Dr. Prosser noted Plaintiff's attacks sounded "more like panic attacks," increased her dosage of Lexapro, and prescribed Xanax. [R. 546.]

On September 9, 2008, Dr. Prosser noted Plaintiff was "finally doing better"; her palpitations, heart racing, and panic disorder had lessened, and she was very happy. [R. 547.] On March 16, 2009, Dr. Prosser noted Plaintiff had done well for five of the last six months but that her symptoms of palpitations, fatigue, and shortness of breath had reappeared. [R. 549.] Dr. Prosser ordered an echocardiogram, which showed that her ejection fraction had decreased to 35%. [R. 548.] On March 31, 2009, Plaintiff underwent a stress test that was negative for ischemia and showed "lower normal but generally preserved global left ventricular systolic performance" and "a 50 percent ejection fraction that subjectively appears somewhat more than this." [R. 558–59.]

On July 1, 2009, Dr. Prosser completed a form at the request of Plaintiff's attorney. [R. 552–557.] Dr. Prosser reported Plaintiff had New York Heart Association Class III limitations, indicating "marked limitation of physical activity: comfortable at rest but less than ordinary activity results in symptoms." [R. 555.] Dr. Prosser also indicated Plaintiff was unable to stand and/or walk for six-to-eight hours per day; could lift ten pounds occasionally and less than ten pounds frequently; should avoid concentrated exposure to extreme cold, extreme heat, and dust or fumes; and could never push/pull, climb, or perform overhead work. [R. 555–57.]

**State Agency Medical Consultant Opinions**

On March 26, 2007, James Weston, M.D., assessed Plaintiff's physical residual functional capacity. [R. 370–77.] Dr. Weston determined Plaintiff could lift 50 pounds occasionally and 25 pounds frequently; stand and/or walk for about six hours in an eight-

hour workday; sit for about six hours in an eight-hour workday; but only occasionally balance. [R. 371–72.]

On May 21, 2007, Manhal Wieland, Ph.D., reviewed Plaintiff's records and determined Plaintiff's mental impairment(s) were not severe. [R. 381–94.]

On October 1, 2007, William W. Lindler, M.D., assessed Plaintiff's physical residual functional capacity. [R. 480–87.] Dr. Lindler found Plaintiff could lift twenty pounds occasionally and ten pounds frequently; stand and/or walk and sit for about six hours in an eight-hour workday; occasionally climb ramps/stairs, stoop, kneel, crouch, and crawl but never balance; and should avoid concentrated exposure to extreme temperatures and humidity. [R. 481–82, 484.]

On October 2, 2007, Lisa Smith Klohn, Ph.D., reviewed Plaintiff's records and determined Plaintiff's mental impairment(s) were not severe. [R. 488–501.] Dr. Klohn stated that Plaintiff's "depression and anxiety [were] mild and would not limit her significantly in the workplace." [R. 500.]

## APPLICATION AND ANALYSIS

As previously stated, Plaintiff contends the ALJ improperly evaluated and weighed the opinion of Plaintiff's treating physician, Dr. Prosser. [Doc. 13 at 4–7.] Plaintiff argues the ALJ engaged in a "torturous semantic exercise to discredit" the opinion of Dr. Prosser, Plaintiff's long-term treating cardiologist. [*Id.* at 4.] Ultimately, Plaintiff argues Dr. Prosser's opinion is supported by the clinical diagnoses and logically yields the functional limitations and restrictions cited in Dr. Prosser's statement. [*Id.* at 5.]

"[B]ecause the treating physician has necessarily examined the [claimant] and has a treatment relationship with the [claimant]," the general rule is that a claimant's treating

physicians' opinions are afforded great weight. *Johnson*, 434 F.3d at 654 (quoting *Mastro*, 270 F.3d at 178). However, an ALJ can give a treating physician's opinion less weight "in the face of persuasive contrary evidence." *Mastro*, 270 F.3d at 178. Moreover, statements that a patient is "disabled," "unable to work," meets a Listing's criteria, or similar statements are not medical opinions; these are opinions on issues reserved to the Commissioner. 20 C.F.R. § 404.1527(e). In undertaking review of the ALJ's treatment of a treating physician's opinions, the reviewing court must remain mindful that its review is focused on whether the ALJ's opinion is supported by substantial evidence and that its role is not to "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Craig*, 76 F.3d at 589.

The ALJ is obligated to evaluate and weigh medical opinions "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527) ("the *Johnson* factors"). Courts typically "accord 'greater weight to the testimony of a treating physician' because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Id.* (quoting *Mastro*, 270 F.3d at 178). Further, while the ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, *Mastro*, 270 F.3d at 178; *Craig*, 76 F.3d at 590, "the ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position," *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000).

26

Upon review of the record, the Court finds the ALJ adequately indicated and explained the weight he assigned to Dr. Prosser's opinion.[9]  An ALJ may properly reject a treating physician's opinion if the physician's "own medical notes [do] not confirm his determination of 'disability.'"  *Craig*, 76 F.3d at 590.  Here, the ALJ gave Dr. Prosser's opinion "very little weight" because the ALJ found very little support for the opinion, stating that

> [t]he degree of limitation indicated by Dr. Prosser in July 2009 is not supported by treatment notes through April 2009, which show that, while [Plaintiff] may have episodes of palpitations, chest pain and shortness of breath, they occur less frequently and are not "meaningful," which presumably means they are not indicative of worsening cardiac function.  Indeed, results of objective testing, including echocardiogram and stress testing, indicate improvement, and treatment notes on more than one occasion indicate that, at least some of, [Plaintiff's] symptoms are panic-related.

[R. 19.]  The ALJ also noted Plaintiff's heart disease was shown to be stable and that her symptoms improved with medication.  [*Id.*]  Accordingly, the ALJ found very little support for Dr. Prosser's opinion that Plaintiff cannot lift more than ten pounds; can never push, pull, carry, or reach overhead; has NYHA Class III heart disease, which indicates marked

---

[9] Any failure by the ALJ to explicitly analyze the factors listed in 20 C.F.R. § 404.1527(d) is harmless error. *See, e.g.*, *Perdue v. Astrue*, 2011 WL 6415490, at *17 (S.D.W. Va. Dec. 21, 2011) ("[C]ourts have applied a harmless error analysis to administrative decisions that do not fully comport with the procedural requirements of the agency's regulations, but for which remand would be merely a waste of time and money.  In general, remand of a procedurally deficient decision is not necessary absent a showing that the [complainant] has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses . . . [, which] constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." (internal quotation marks and citation omitted)); *see also Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n.8 (4th Cir. 2004) ("While the general rule is that an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained, reversal is not required where the alleged error clearly had no bearing on the procedure used or the substance of the decision reached." (internal quotation marks and citation omitted)).  Because the ALJ explained why he assigned "very little weight" to Dr. Prosser's opinion, the Court concludes there is no reversible error in the ALJ's explanation of his decision with respect to Dr. Prosser's opinion.

limitation of physical activity where Plaintiff is comfortable at rest but less than ordinary activity results in symptoms; and does not have the strength or stamina to work six to eight hours a day on a long-term basis.  [R. 18–19.]

Substantial evidence supports the ALJ's decision to give Dr. Prosser's opinion little weight.  First, Dr. Prosser's treatment notes contain no indication of Plaintiff's limitations; his opinion as to Plaintiff's ability to work a full day is contained only in a form completed for Plaintiff's counsel.  [*See* R. 552–57.]  Second, Dr. Prosser's treatment notes through the date last insured indicate Plaintiff's condition was improving [*see, e.g.*, R. 418, 540–41, 543–44, 547, 558–59], and to the extent she continued to have chest pain and similar symptoms, Plaintiff's attacks sounded "more like panic attacks" [R. 546; *see also* R. 456 (stating there was no cardiac cause for Plaintiff's chest pain), 512 (attributing Plaintiff's chest pain to gastroesophageal reflux disease and panic attacks)].  Additionally, only Dr. Prosser opined Plaintiff would be unable to work an eight-hour workday—no other treating physician or state agency consultant gave a similar opinion. Further, Dr. Prosser opined Plaintiff could stand and/or walk, with normal work breaks, during a six to eight hour workday "as tolerated" [R. 555], i.e., he did not opine Plaintiff was incapable of standing, walking, or performing some work.   Moreover, the form completed by Dr. Prosser requested

> [a]dditional comments about cardiac functional limitations (specific examples, types of limiting symptoms, and task completion times . . . —for example, in your opinion, could the patient walk 1 block at a normal pace while carrying no weight? 2 blocks?  Climb one or more flights of stairs?).

[*Id.*]  However, Dr. Prosser failed to give any additional comments.  [*See id.*]  Finally, Plaintiff failed to direct to the Court to any evidence or a medical source opinion that would contradict the ALJ's findings or conclusion.

Ultimately, the responsibility for resolving conflicts in the evidence falls on the ALJ, not on the reviewing court.  *Craig*, 76 F.3d at 589.  The ALJ's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence.  *Laws*, 368 F.2d at 642; *Snyder*, 307 F.2d at 520.  Although Plaintiff may disagree with the ALJ's determination, the Court is constrained to affirm the ALJ's decision so long as substantial evidence of record supports that decision.  *See Edwards*, 937 F.2d at 584 n.3 (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Consequently, the Court finds the ALJ's decision as to Dr. Prosser's opinion is supported by substantial evidence.

## CONCLUSION AND RECOMMENDATION

Wherefore, based on the foregoing, it is recommended that the decision of the Commissioner be AFFIRMED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

March 27, 2012
Greenville, South Carolina